## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-14102-CV-MOORE/MAYNARD
### CASE NO. 12-14022-CR-MOORE

**ALEXANDER MICHAEL ROY**

> **Movant,**

**v.**

**UNITED STATES OF AMERICA,**

> **Respondent.**

_____/

## REPORT OF MAGISTRATE JUDGE RECOMMENDING
## DENYING MOTION TO VACATE 28 U.S.C. § 2255 (CV DE 1)

**THIS CAUSE** comes before this Court upon an Order of Reference, CV DE 4, and the

above Motion.  The record before this Court consists of the Motion and Memorandum of Law in

Support, CV DE 1 and 3,[1] the Government's Response, CV DE 12, and Movant's Reply, CV DE

15.  The Court has also reviewed the relevant pleadings filed in the underlying criminal case, Case

No. 12-14022-CR-MOORE, and the criminal appeal to the Eleventh Circuit Court of Appeals,

Case No.12-15093-CC USCA, of which this Court takes judicial notice. *See* Fed. R. Evid. 201;

*Nguyen v. United States,* 556 F.3d 1244, 1259 n.7 (11th Cir. 2009) (citing *United States v. Glover,*

179 F.3d 1300, 1302 n.5 (11th Cir. 1999)).  Having reviewed the record, this Court recommends

as follows:

---

[1] Citations to "CV DE" refer to docket entries in this civil habeas proceeding, while citations to "CR DE" refer to the docket entries in Movant's underlying criminal case.

## INTRODUCTION

Alexander Michael Roy ("Movant") filed this motion to vacate pursuant to 28 U.S.C. § 2255 ("Section 2255"), challenging the constitutionality of his convictions in the underlying criminal case.  On March 15, 2012, Movant was charged by federal indictment with one count of enticement of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b) (Count 1) and four counts of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Counts 2-5). [2]  CR DE 16.  Movant went to trial on June 8, 2012 and was convicted on all counts.  On September 12, 2012, Movant was sentenced to life imprisonment as to Count 1 and 120 months' imprisonment as to each of Counts 2, 3, 4, and 5, to be served concurrently.

Movant's Section 2255 Motion raises the following five grounds for relief:

1.  Movant was denied effective assistance of counsel, where his lawyer agreed to the excusal of a juror during deliberations without further questioning although factual support for the juror's excusal was lacking. In addition, his lawyer was ineffective for failing to request further questioning of the juror about jury misconduct.

2.  Movant was denied effective assistance of counsel, where his lawyer (1) failed to object to the testimony of Detective Amber Warren about "grooming" of the fictious minor by Movant and (2) essentially conceded, during cross-examination of that detective, that Movant had engaged in "grooming" of that fictious minor. In addition, Movant's lawyer was ineffective for failing to argue that this "grooming" testimony opened the door to the admission of the testimony of two previously excluded defense experts.

3.  Movant was denied effective assistance of counsel, where his lawyer failed to object to Movant being charged with and convicted of four counts of possession of child pornography that were multiplicitous and violated the Double Jeopardy Clause.

4.  Movant was denied effective assistance of counsel, where his lawyer failed to object to a fundamental instructional error.

---

[2]    On March 31, 2012, Movant was charged in a superseding indictment. The language of Count 1 was revised in the superseding indictment, but the statutory offenses charged remained the same. CR DE 72.

5.      Movant was denied effective assistance of counsel, where his lawyer failed
to file a motion to suppress evidence seized pursuant to two search warrants
on the basis that the first search warrant violated the Fourth Amendment's
particularization requirement and the other was based on the fruits of the
unconstitutional search.

## BACKGROUND

On January 13, 2012, Detective Athena Ross of the Sumter County Sheriff's Office

(SCSO) posted an ad on Craigslist titled: "Two girls on vacation for fun – ww4m - 30 Kissimmee."

CR DE 145 at 58-60, 72. The ad read "We are staying at Disney, if you seek family intimate fun

activities. Only serious interests, please!" *Id*. at 73. Movant responded to the ad, indicating that he

was interested and provided details about himself, including that he was a teacher. *Id* at 75-76.

Det. Ross, acting in an undercover capacity, told Movant that the advertisement was for herself, a

thirty-year old woman named Denise, and her daughter, a thirteen-year old girl named Torie.

Movant, "Denise," and "Torie" (played by a second undercover officer, Det. Amber Warren)

discussed various potential sexual activities by email, telephone and text message.  Eventually they

arranged to meet in Kissimmee, Florida at a Waffle House Restaurant.  Movant drove to the

restaurant at the appointed date and time, entered the parking lot, drove behind the car that

belonged to "Denise" and "Torie," and then drove away without ever parking his vehicle.  Law

enforcement pulled him over and arrested him, finding condoms and lubricant in his pockets.

Two search warrants were executed on Movant's home. CV DE 12-6; 12-8. The first

warrant was executed on January 14, 2012 ("first warrant").  The officers seized a Toshiba laptop,

a Kodak -camera, three CDs, two thumb drives, and a computer, all of which contained

photographs and videos containing child pornography. CR DE 140 at 176; CR DE 141 at 150-165.

Law enforcement also found the text of online conversations between Movant and a minor with

initials L.B.  L.B. was depicted in some of the pornography found on Movant's computer, which

Movant created himself.  Other pornographic images on Movant's devices depicted other underage girls.  CR DE 141 at 18-20, 119-22, 154. The second search warrant was executed on January 19, 2012 ("second warrant").  CR DE 140 at 200. The second warrant was obtained because during the initial search officers came across a handwritten letter that appeared to be from a minor.  CV DE 12-9 at 4.  Because the letter was outside the scope of the first warrant, officers obtained the second warrant prior to seizing the document.  *Id*.

A federal grand jury charged Movant with one count of inducement of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b) (Count 1) and four counts of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Counts 2-5).  The child pornography counts each charged Movant with possession of child pornography on a different device:  Count 2 charged possession of child pornography on a desktop computer; Count 3 charged possession of child pornography on a Toshiba laptop computer; Count 4 charged possession of child pornography on a USB thumb drive; and Count 5 charged possession of child pornography on three (3) compact disks. CR DE 72.  Motions to suppress evidence seized during execution of the search warrants were denied.  CR DE 86; 87.

Movant's trial started on June 8, 2012 and ended on June 15, 2012. The jury found Movant guilty of all five counts. CR DE 99.  Movant subsequently filed a motion for a new trial, CR DE 109, which was denied, CR DE 113. On September 12, 2012, Movant was sentenced to life imprisonment as to Count 1 and 120 months' imprisonment as to each of Counts 2, 3, 4, and 5, all to be served concurrently. CR DE 126 at 2.  Movant's trial counsel – Jonathan Jay Kirschner— withdrew from the case at that point.  CR DE 120; 123.  Assistant Federal Public Defender Paul Michael Rashkind represented Movant on appeal. CR DE 127; 128.

4

On appeal, Movant raised the following issues: (1) Whether Movant's trial violated the Sixth Amendment because defense counsel was absent during a critical stage of the trial; (2) Whether the district court erred by denying Movant's proposed jury instructions; (3) Whether the district court erred by denying the motions to suppress; and (4) Whether the sentence of life imprisonment as to Count 1 was substantively unreasonable. Brief for Appellant, *United States v. Roy* (No. 12-15093). A three-judge panel concluded that Movant was denied his right to counsel when his attorney was absent during a critical stage of the trial and reversed Movant's convictions. *United States v. Roy*, 761 F.3d 1285, 1298 (11th Cir. 2014). On September 3, 2014, the Eleventh Circuit vacated the panel's opinion and ordered the case to be heard by the Court *en banc*. *United States v. Roy*, 580 F. App'x 715, 716 (11th Cir. 2014). On April 26, 2017, the Eleventh Circuit reversed the panel's decision and affirmed Movant's judgment in a written opinion. *United States v. Roy*, 855 F.3d 1133, 1189 (11th Cir. 2017).

## **TIMELINESS**

For purposes of the federal one-year limitations period, the judgment of conviction in the underlying criminal case became final on March 19, 2018, when the Supreme Court of the United States denied Movant's petition for writ of certiorari. *Roy v. United States*, 138 S.Ct. 1279 (2018); CR DE 154. Movant had one year from the time his conviction became final, or no later than March 19, 2019, to timely file this Section 2255 Motion. *See* 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 527 (2003); *Griffith v. Kentucky,* 479 U.S. 314, 321 n.6 (1986); *Downs v. McNeil,* 520 F.3d 1311, 1318 (11th Cir. 2008). Movant timely filed his Section 2255 Motion with supporting Memorandum on March 19, 2019. CV DE 1; 3.

## LEGAL STANDARD

Collateral review is not a substitute for direct appeal and the grounds for collateral attack of a final judgment are extremely limited. A prisoner is entitled to relief under Section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States,* 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

"Relief under Section 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981) (internal quotation marks omitted).  If a court finds a claim under Section 2255 valid, the court shall vacate and set aside the judgment, discharge the prisoner, grant a new trial, or correct the sentence. *See* 28 U.S.C. § 2255. The burden of proof is on the movant, not the Government, to establish that vacatur of the conviction or sentence is required. *Beeman v. United States,* 871 F.3d 1215, 1221-1222 (11th Cir. 2017), *rehearing en banc denied by, Beeman v. United States,* 899 F.3d 1218 (11th Cir. 2018), *cert. denied by, Beeman v. United States,* 139 S.Ct. 1168 (2019).

In order to be entitled to federal habeas relief based on a claim of ineffective assistance of counsel, a movant must show (1) counsel's performance was so deficient as to fall below an objective standard of reasonableness; and (2) but for counsel's deficient performance there is a "reasonable probability" that the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish deficient performance, a movant must show that, in light of all the circumstances, counsel's performance was outside the wide range of

professional competence. *Id*. at 690; *see Cummings v. Sec'y for Dep't of Corrs.*, 588 F.3d 1331, 1356 (11th Cir. 2009) ("To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place."). The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. *Id*. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. "When evaluating this probability, 'a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'" *Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002) (*quoting Strickland*, 466 U.S. at 695). The movant bears the burden of proof on both the performance and prejudice prongs of a *Strickland* claim. *Johnson v. Alabama*, 265 F.3d 1156, 1176 (11th Cir. 2001) (citation and quotation marks omitted). A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Strickland*, 466 U.S at 697. "Courts must 'indulge [the] strong

presumption' that counsel's performance was reasonable and that counsel 'made all significant

decisions in the exercise of reasonable professional judgment.'" *Chandler*, 218 F.3d at 1314.

## DISCUSSION

### 1. COUNSEL WAS NOT INEFFECTIVE FOR AGREEING TO EXCUSE JUROR NO. 7.

In **claim 1,** Movant asserts that trial counsel was ineffective for agreeing to excuse a juror

after the start of jury deliberations without further investigation into jury misconduct. A review of

the record shows the juror involved was Juror No. 7. The Eleventh Circuit *en banc* opinion

describes the underlying facts in this manner:

> The jury retired to deliberate at 12:43 p.m. on Thursday, June 14, 2012. At 6:30 p.m. that evening, the jury reported that it was unable to reach a verdict. Roy's counsel suggested an *Allen* charge. *See Allen v. United States*, 164 U.S. 492, 501-02 (1896). After further discussion, though, and without an *Allen* charge being given, the jury foreman reported that they would "like to recess for the night and try again in the morning." The court then gave the *Allen* charge anyway and let the jurors go home for the night without further deliberations.
>
> The problem the jury was having surfaced the next morning before deliberations resumed. One of the jurors went to the courthouse early, sought out a clerk, and complained about how the deliberations had been going. In the presence of counsel for both sides, the judge questioned the juror. When the judge asked him if he wished to continue to deliberate, the juror said that given the way "the verdict is being deliberate[sic] in the jury room, no sir." When the judge asked again, the juror stated: "Sir, I want to continue, but the way that it's – the vulgar way that it's being done, foul way, whatever word you can use, that they are – that is being used in the jury room to come to a verdict is – I think borders on against the law." When the judge explained to the juror that the choice was for him to either rejoin the jury or the judge could remove him if he was unable to continue, the juror said he wanted to consult with a lawyer. He explained that he wanted a lawyer "to speak to, to see what rights I have as an American citizen," and "I need to know what my legal rights are when things happen within that jury box that's only known to the jurors but borders on a violation of the laws."
>
> After discussing it, the AUSA and Roy's counsel agreed that they wanted the problematic juror dismissed and both stated that they preferred to proceed with the remaining 11 jurors instead of calling in the alternate juror and restarting deliberations. Roy himself agreed to proceed with 11 jurors. The complaining juror was removed from the jury, which resumed deliberations. Only 37 minutes after

8

the jury resumed deliberations that morning, it reached a verdict convicting Roy of all five counts charged in the indictment.

CR DE 152 at 114-115.

Movant says counsel performed deficiently by agreeing to excuse Juror No. 7 because there was no factual basis for doing so.  CV DE 3 at 4.   In support, Movant relies on *Green v. Zant*, 715 F.2d 551 (11th Cir. 1983) and *Peek v. Kemp*, 784 F.2d 1479 (11th Cir. 1986).   Both are distinguishable from the present case.

In *Zant*, the Eleventh Circuit held that before a trial court may remove a juror based on incapacity to perform his duties, "[t]here must be some 'sound' basis upon which the trial court exercises his discretion."  *Zant*, 715 F.2d at 555 (*quoting United States v. Rodriguez*, 573 F.2d 330, 332 (5th Cir. 1978)).   "Dismissal of a juror 'for want of factual support, or for a legally irrelevant reason,' is prejudicial."  *Id.*   In *Zant*, a juror collapsed during deliberations in a death penalty case and cried out, "I can't do it."  *Zant*, 715 F.2d at 554. The foreperson told the trial court that the juror who collapsed was too ill to continue deliberating and asked the court to excuse the juror. *Id*.  The court did so without personally questioning the juror.  *Id*.  at 554-55.  The court substituted an alternate juror for the one who had collapsed and the jury subsequently imposed a sentence of death.  *Id*. at 555.   Later, the juror who collapsed said she was not ill but instead was distressed because she was one of two holdouts regarding the death penalty and she was worried the other holdout was going to switch sides, leaving her to prevent the defendant's execution.  *Id*.  That was why she said she could not "do it."  *Id*.   The Eleventh Circuit found that the trial court erred in not questioning the juror personally or further investigating the circumstances before excusing and replacing the juror.  *Id*.

*Peek* involved similar facts.  In *Peek*, a state prisoner sought federal habeas relief based on the trial court's decision to discharge a juror during deliberations due to illness without personally

questioning the juror or further investigating the facts. *Peek*, 784 F.2d at 1482. The court began by recognizing that "the erroneous replacement of a juror may under certain circumstances deprive a defendant" of constitutional rights. *Id*. at 1483 (*citing Zant, supra*). The court declined to remand, however, because the post-conviction record supported a finding that the juror had in fact been too ill to continue deliberating so there was no showing of prejudice. *Id*. at 1484.

*Zant* and *Peek* have two common threads that are not present here. First, they involve the excusal of a juror alleged to be too ill to serve or otherwise incapacitated. Second, they involve a trial court's failure to speak to the juror personally to determine whether a factual basis existed for the juror's removal from deliberations. Neither of these circumstances are at issue in this case. Here, Juror No. 7 did not complain about illness or any other form of physical or mental incapacity and the trial court questioned Juror No. 7 directly. Juror No. 7's answers to those questions provided a clear factual basis to dismiss him. CR DE 147 at 6-8. Juror No. 7 stated that he did not wish to continue deliberating the way the process was going. *Id*. When the Court replied that Juror No.7 had two options – to deliberate or be excused – Juror No. 7 said he wanted to talk to a lawyer about his own legal rights. *Id*. The prosecutor later added that another option was for the Court to question Juror No. 7 outside the parties' presence to find out what was happening in the jury room. *Id*. at 9-10. The Court rejected that idea, stating:

> [I]n fairness to both parties in this case, the moment that I hear out of your presence what – both parties' presence – what his reason is, I think it may inject a bias in my own mind as to how to proceed, and I'm not – or at least an appearance of bias from either one of you as to how I proceed from that point forward, and I would not want to have you question or have the opportunity to question my own impartiality based on what I heard out of your presence.

> So, you know, I do think that, you know, this – I mean, I do respect the fact that he's disagreeing with something that is occurring in the jury deliberations, without knowing the specifics of what this is, but quite frankly that is not all that uncommon that a juror may disagree. That is part of the deliberative process. And I would note that he is – he is only – he's only one of the 12 jurors that apparently is offended

by the deliberative – some aspect of the deliberative process. So it's not as if there are a – a number of jurors that are complaining, which I think would present a very different picture. We have a lone juror here, and, you know, apparently the other 11 are not as offended by the process as he is. I have to respect his opinion, but I think there's a way to deal with this and continue and to allow the deliberations to continue without him. How we do that is another issue, but it seems to me it's time to let this juror go and allow the other jurors, either with the alternate juror or with 11, to continue to deliberate. That's my own view of it, but you're welcome to respond.

CR DE 147 at 10-11.

The trial court made a reasoned decision based on the record before it to dismiss Juror No. 7 without further inquiry.  It was entirely within its discretion to do so.  Investigation of alleged juror misconduct is committed to the discretion of the district court.  *United States v. Prosperi*, 201 F.3d 1335, 1341 (11th Cir. 2000) (*citing U.S. v. Harris*, 908 F.2d 728, 733 (11th Cir. 1990)); *United States v. Dominguez*, 226 F.3d 1235, 1246 (11th Cir. 2000) ("The most salient aspect of the law in this area is the breadth of discretion given to judges who are called upon to deal with the possibility of juror misconduct.").  Juror No. 7's allegations of jury misconduct were vague and non-specific, and "[t]he more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate." *United States v. Caldwell*, 776 F.2d 989, 996 11th Cir. 1985). Indeed, a district court "should be reluctant to invade the sanctity of the jury's deliberation room and should 'err on the side of too little inquiry as opposed to too much.'" *United States v. Hughes*, 830 Fed. Appx. 624, 627 (11th Cir. 2020) (*quoting United States v. Abbell*, 271 F.3d 1286, 1304 n. 20 (11th Cir. 2001)); *see also United States v. Oscar*, 877 F.3d 1270 (11th Cir. 2017); *United States v. Augustin*, 661 F.3d 1105, 1133 (11th Cir. 2011).  Further, where – as here – "a jury problem involves the possibility of <u>internal</u> misconduct, the trial judge's 'discretion <u>extends even to the initial decision of whether to interrogate the jurors</u>.'"  *Dominquez*, 226 F.3d at 1246 (emphasis added). Having personally questioned Juror No. 7, the trial court had a factual basis to

excuse him and was under no obligation to interrogate him or the other jurors any further. *See United States v. Cuthel*, 903 F.2d 1381, 1382–83 (11th Cir. 1990) ("No per se rule requires the trial court to investigate the internal workings of the jury whenever a defendant asserts juror misconduct.").

Counsel's decision not to object to Juror No. 7's dismissal given the factual basis before the court was not deficient performance. It was not unreasonable in light of prevailing professional norms or "outside the wide range of professional competent assistance" in light of all the circumstances. *Strickland*, 466 U.S. at 690. This standard is highly demanding, and meeting it is never an easy task. It "must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 689-90).

Movant also has failed to show prejudice. Movant argues that prejudice is shown by the jury's return of a guilty verdict only thirty-seven minutes after deliberations resumed without Juror No. 7. That is not the correct inquiry, however. To establish prejudice, Movant is required to prove a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694 (emphasis added). In other words, Movant has to show that but for counsel's failure to object, Juror No. 7 would have continued deliberating and the verdict would have been different. Thus, the question, at least initially, is whether Movant has shown a reasonable probability that the court would have questioned jurors further about internal deliberations and uncovered jury misconduct had trial counsel objected to Juror No. 7's excusal. The record shows the answer to that question is no. The prosecutor raised the option of questioning Juror No. 7 further outside the parties' presence and the court declined to do so, explaining the basis of its decision on the record. CR DE 147 at 10-11. There is no reason to believe an objection

12

by counsel or a request for further investigation would have changed the court's decision in this regard. "It is not professionally unreasonable for a lawyer to fail to pursue issues which have little or no chance of success, and a criminal defendant is not prejudiced by counsel's failure to pursue non-meritorious claims or those on which they likely would not have prevailed." *Barnes v. United States*, 2018 WL 2770171, at *18 (S.D. Fla. Mar. 28, 2018). Movant says trial counsel acknowledged after the trial in a Motion for In Camera Interview of Juror that he performed deficiently by not asking the court to interrogate Juror No. 7 further. CV DE 3 at 6 (citing CR DE 108-2). Trial counsel's statements, however, are not dispositive of Movant's claim. *See Chandler*, 218 F.3d at 1315 n. 16 (11th Cir. 2000) (because the ineffective assistance inquiry is objective, counsel's post-conviction admission of deficient performance "matters little"); *Walls v. Bowersox*, 151 F.3d 827, 836 (8th Cir. 1998) (trial counsel's concession of ineffectiveness is not dispositive). Having failed to show deficient performance or prejudice, Movant's ineffective assistance of counsel argument in claim 1 should fail.

### 2. COUNSEL WAS NOT INEFFECTIVE WITH RESPECT TO THE TESTIMONY ABOUT "GROOMING" BEHAVIOR.

In **claim 2,** Movant claims counsel rendered ineffective assistance by failing to object when Det. Warren testified that Movant engaged in "grooming" behavior when speaking to what Movant believed was a thirteen-year old girl. "Grooming" refers to behavior child abusers use when trying to ingratiate themselves with their victims. Movant says Det. Warren's grooming testimony constituted improper expert testimony and was unduly prejudicial. Movant also argues counsel was ineffective for essentially conceding, on cross-examination, that Movant engaged in grooming and for not arguing that this grooming testimony opened the door to testimony from two defense experts. The Government responds that Det. Warren's testimony was correctly admitted and, in the alternative, any possible error was harmless. The Government also says Det. Warren's

grooming testimony did not open the door to defense experts' testimony because their testimony invaded the province of the jury.

Det. Warren testified as follows regarding Movant's grooming behavior:

| | |
|---|---|
| Government: | And these questions are slightly different than the earlier ones that he was asking you.  Have you experienced this type of question from defendants before? |
| Det. Warren: | Yes. |
| Government: | And what's – what have you experienced in your conversations with defendants with this type of questioning and conversation from a defendant? |
| Mr. Kirschner: | Objection, Your Honor. |
| The Court: | Sustained. |
| Government: | In this case, what was the defendant doing with regard to the questions to you? |
| Det. Warren: | Initially, he was trying to confirm that we had gone to a theme park, as Detective Ross had stated.  And then he was trying to build, like an emotional connection, like a rapport with me. |
| Government: | And, in your experience, is there a term for that, building an emotional connection or rapport between an adult and child? |
| Det. Warren: | Yes, it's grooming.  It's called "grooming."  It's usually for sexual abuse. |

***

| | |
|---|---|
| Government: | … Now, Detective Warren, with regard to that portion of the – that final portion of the call that we just played, the third portion of the call, was that a continuation of – |
| Mr. Kirschner: | Objection to the leading, Your Honor. |
| The Court: | Sustained. |
| Government: | How would you characterize that section of the call? |

14

| | |
|---|---|
| Det. Warren: | That was more grooming. |
| Government: | And with regard to grooming of the child, does – is that something that makes the child more – |
| Mr. Kirschner: | Objection to leading, Your Honor. |
| The Court: | Sustained. |
| Government: | Would you say that would cause a child to be more amenable or less amenable to – |
| Mr. Kirschner: | Same objection, Your Honor. |
| Government: | -- having the sexual encounter? |
| The Court: | Sustained. |
| Government: | For this section of the call, how would you say that it was more grooming of the child? |
| Det. Warren: | He was asking me, like, "feeling" questions, as opposed to black and white, "what did you do?"  Like I want you to be comfortable and, "Oh, we can do that," or "It's okay."  Things like that. |
| Government: | And you said "feeling."  You mean touch feeling or emotional feeling? What kind of feeling are you talking about? |
| Det. Warren: | Emotional feeling, like touchy feeling.  I feel good about myself.  I feel comfortable with you.  Those kinds of things. |
| Government: | And who would feel more comfortable with whom by this grooming of the child? |
| Det. Warren: | The child would feel more comfortable with the adult. |

CR DE 140 at 9-12.

Movant's arguments in claim 2 fail for several reasons.  First, Movant's claim that counsel failed to object to Det. Warren's grooming testimony is contradicted by the record.  The transcript makes clear that counsel objected to the form of the question four times during the Government's

attempts to elicit testimony from Det. Warren about grooming. Counsel's objections were sustained, which significantly limited Det. Warren's ability to testify about grooming. Det. Warren was unable to opine broadly about routine behaviors of child molesters and child victims as experts have done in other cases. Rather, as a result of defense counsel's objections, Det. Warren testified only that "grooming" is the term used when a sex abuser tries to build an emotional connection with a child and Movant tried to groom "Torie" by asking her "feeling" questions to make her more comfortable. *Id.* The undersigned sees nothing constitutionally deficient about counsel's advocacy in this regard, which successfully limited potentially damaging testimony to the bare minimum.

Second, to the extent Movant contends that counsel should have objected to admission of the grooming testimony itself (instead of merely objecting to the form of the questions), Movant has not shown such an objection would have been meritorious. Courts have recognized that "[c]hild sexual abuse is often effectuated following a period of 'grooming' and the sexualization of the relationship." *United States v. Brand*, 467 F.3d 179, 203 (2d Cir.2006) (*quoting* Sana Loue, *Legal and Epidemiological Aspects of Child Maltreatment*, 19 J. Legal Med. 471, 479 (1998). Consistent with Det. Warren's testimony, judges have stated that "the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011). Numerous courts have allowed jurors to hear testimony about grooming behavior to explain the typical modus operandi of child molesters. In *United States v. Romero*, the Seventh Circuit held that this type of testimony was admissible. *Romero*, 189 F.3d 576, 585-87 (7th Cir. 1999). In *Romero*, the defendant was charged with kidnapping and transporting a minor with intent to engage in criminal sexual activity. *Id.* at 581. The trial court admitted expert testimony

about the practices of child abusers.  This testimony "illuminated how seemingly innocent conduct such as [the defendant's] extensive discussions with [the victim] … could be part of a seduction technique."  *Id*. at 585.  Similarly, in *United States v. Hitt*, the Fifth Circuit found no abuse of discretion in the admission of expert testimony about "grooming."  *Hitt*, 473 F.3d 146, 158 (5th Cir. 2006).   In *Hitt*, Defendants were charged with transporting a minor across state lines for purpose of criminal sexual activity.  *Id*. at 150.  Noting that several other circuits had allowed such testimony, the Fifth Circuit held that testimony about grooming was properly admitted.  *Id*. at 158; *see also United States v. Hayward*, 359 F.3d 631, 636-37 (3d Cir. 2004) (expert testimony about general practices of child molesters was admissible); *Simonton v. Evans*, 2008 WL 4891222, *7, *30 (S.D. Cal. Nov. 10, 2008) (admitting police officer's testimony about the grooming practices of child molesters).[3]  These cases show an attempt by counsel to keep Det. Warren from testifying about grooming altogether probably would not have been successful.

Movant relies heavily on *United States v. Raymond*, 700 F. Supp. 2d 142 (D. Me. 2010), to show Det. Warren's testimony about grooming was inadmissible.  In *Raymond*, the court denied the government's request to introduce testimony from a law enforcement expert about the behavioral patterns of child molesters, child victims, and the grooming or seduction processes.  *Id*. at 144-45.  The court found that the expert's proposed testimony did not satisfy the fit or reliability

---

[3]   Although the Eleventh Circuit has not specifically addressed the admissibility of grooming testimony, it has approved the verdict and/or sentence of at least two cases involving expert testimony about grooming.  In *United States v. Syed*, the Eleventh Circuit rejected a defendant's sufficiency of evidence challenge to his Section 2422(b) conviction in part based on evidence of the defendant's "grooming tactics."  *Syed*, 616 Fed. Appx. 973, 978 (11th Cir. 2015).  In so holding, the court acknowledged expert testimony that defendant engaged in grooming behavior "designed to either befriend or establish an emotional control with a young person to try to lower their inhibitions for the purpose of sexual assault or sexual exploitation of a child."  *Id*. at 978, n. 2. Similarly, in *United States v. Keelan*, the Eleventh Circuit affirmed a restitution order where an expert testified that the defendant's interactions with a minor were part of the "grooming process" typically employed by child predators.  The expert testified that the "six phases of grooming – identification, connection, information gathering, need fulfillment, sexual inhibition reduction, and preservation – were intended to establish [the defendant's] psychological control over [the minor]."  *Id*.

requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  *Raymond* is distinguishable, however, because the expert at issue proffered opinions on a wide-ranging variety of topics relating to child molesters and child victims which are not present here.  As stated above, due largely to defense counsel's sustained objections, Det. Warren's testimony was very limited by comparison.  Further, *Raymond* is an out of circuit, district court case.  As such, it was not controlling on the district court in this instance.

The Parties disagree over whether Det. Warren testified about grooming as an expert witness or a lay witness.  Movant argues that her testimony should be viewed as impermissible expert testimony, while the Government argues it was permissible lay testimony.  The case law goes both ways.  Some courts permit testimony about the modus operandi of child molesters, which includes grooming, as specialized knowledge provided by experts.  *See e.g. United States v. Batton*, 602 F.3d 1191, 1202 (10th Cir. 2010); *United States v. Romero*, 189 F.3d 576, 584 (7th Cir. 1999).  Other courts allow grooming testimony from lay witnesses or conclude that grooming behavior is common knowledge which does not require specialized expertise.  *See e.g. United States v. Lewis*, 762 F. App'x 786, 797 (11th Cir. 2019), cert. granted, judgment vacated on other grounds; *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011)). In the undersigned's view, whether Det. Warren's statements were lay opinion testimony or expert testimony is not dispositive.  The bottom line is that courts at that time and since routinely allow this type of testimony from law enforcement officers with experience in this area.  Det. Warren testified that she had more than a year's experience investigating child abuse cases, she had taken several classes regarding child abuse and sex crimes, she had worked on three major investigations with the Internet Crimes Against Children organization, she was the liaison for Lake County Sheriff Office's human trafficking cases, and she had spoken in an undercover capacity with twenty-five

suspects during the week she investigated Movant alone.  CR DE 140 at 3-5.  That experience provided an adequate foundation to support her limited testimony about grooming.

It is not professionally unreasonable for an attorney not to pursue arguments that have little or no chance of success, and a criminal defendant is not prejudiced by a lawyer's failure to raise non-meritorious claims or those which probably would not have prevailed.  *See generally Strickland*, 466 U.S. at 690 ("counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment"); *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1422 (2009) (counsel not required to raise every available non-frivolous argument); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to raise non-meritorious objections).

In addition, trial counsel used Det. Warren's grooming testimony strategically to show it was Det. Warren, not Movant, who improperly engaged in grooming tactics by trying to make Movant feel comfortable with illegal activity.  CR DE 140 at 13-26.  On cross-examination, counsel obtained admissions from Det. Warren that she gave Movant a compliment by calling him "handsome" to encourage him; told Movant she had "no limits," meaning no boundaries around sexual activity; brought up anal and oral sex to communicate that she was "open" to anything; told Movant she had watched pornographic movies; mentioned  sexual positions; and made sexually suggestive comments such as "if you're a teacher, you can teach me too" and "I wouldn't be sad if I got to do this." *Id*.  Movant now characterizes counsel's tactic as essentially conceding that he engaged in grooming behavior.  The undersigned disagrees.  Counsel did not concede that Movant's statements constituted grooming.  Instead, counsel suggested that it was law enforcement who groomed or seduced Movant, not the other way around.  Strategic decisions regarding the conduct of cross-examination are virtually unassailable on federal habeas review.

19

*See Provensano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (*citing Strickland*, 466 U.S. at 690); *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (The decision to cross-examine a witness and the manner in which the cross-examination is conducted are tactical decisions "well within the discretion of a defense attorney."). Counsel's decisions in this area were reasonable. The jury ultimately disagreed with counsel's arguments, but counsel is not ineffective simply because he did not prevail. *See Chandler*, 218 F.3d at 1314 ("[n]or does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness"); *Cano v. United States*, 2009 WL 3526564, *3 (M.D.N.C. 2009) ("Petitioner cannot succeed on an ineffective assistance of counsel claim simply because his attorney did not win").

Even if counsel's failure to object to Det. Warren's statements about grooming was error, Movant has not demonstrated prejudice. Det. Warren's testimony on grooming was brief and limited. Her testimony was significantly narrower than the wide-ranging testimony about the behaviors of child molesters that courts often permit. Movant has shown no reasonable probability that but for Det. Warren's few statements on grooming he would not have been convicted. Nor can he. The jury received evidence which included written communications between Movant and Det. Ross (posing as the thirteen-year old's mother), the audio recording of his phone call with Det. Warren (posing as the thirteen-year old girl), Movant's actions in traveling to meet the pair for "family intimate fun activities," written communications between Movant and his previous real minor victim L.B., and the sexually explicit images of minors engaging in criminal sexual conduct created and/or possessed by Movant on multiple digital devices. In light of the substantial evidence against him in this case, Movant cannot show that but for counsel's failure to object to Det. Warren's comments about grooming, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Lastly, Movant's claim that counsel was ineffective for not arguing Det. Warren's testimony opened the door to Movant's two experts is without merit.  The trial court previously excluded testimony from two defense experts—a forensic linguist and a psychologist—who opined that Movant was not guilty of enticement of a minor as set forth in the indictment. Specifically, Dr. Weitz, the psychologist, provided an affidavit stating, "it is my expert opinion with a reasonable degree of certainty, that there is no evidence that Mr. Roy sexually engaged the alleged victims by using either, persuasion, enticement, inducement, or coercion, or any combination, and thus he did not commit the criminal offense for which he is charged in Count 1 of his indictment."  CR DE 41-11 at 3.  Similarly, Dr. Perlman, the linguist, provided a report stating that "[Roy] does not engage in any of the verbal behaviors described in the statute [18 U.S.C. §2422(b)][.]"  CR DE 41-12 at 11. Prior to trial, the district court excluded these opinions on the grounds that they invaded the province of the jury.  CR DE 64 at 6 ("To allow this expert testimony of Dr. Weitz and Dr. Perlman would be in the nature of directing a verdict and violating those areas of interpretation of the facts of the case which are left solely to the jury."); *see also* Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.").  Nothing about Det. Warren's testimony changed that result or caused the experts' impermissible testimony to become permissible.  Counsel is not ineffective for failing to raise non-meritorious issues and a defendant is not prejudiced by counsel's failure to make non-meritorious claims.  As such, claim 2 should be denied.

### 3. COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO ARGUE COUNTS 2 THROUGH 5 WERE MULTIPLICITOUS.

In **claim 3**, Movant asserts that trial counsel was ineffective for failing to object to Movant being charged with four counts of possession of child pornography that were multiplicitous. "An indictment is multiplicitous if it charges a single offense in more than one count." *United States v. Williams*, 527 F.3d 1235, 1241 (11th Cir. 2008)). An indictment is not multiplicitous "if the charges differ by even a single element or alleged fact." *United States v. Woods*, 684 F.3d 1045, 1060 (11th Cir. 2012). If an indictment is deemed multiplicitous, then it violates double jeopardy principles. *Id*. Movant claims Counts 2 through 5 were multiplicitous because the different media devices that contained the child pornography shared the same images and were simultaneously possessed in one location. CV DE 3. The Government responds that these counts were not multiplicitous because the multiple media devices all constituted separate physical mediums, which permits the government to charge separate counts for each device. CV DE 12.

It is clear from the record that the some of the same images were shared across the four devices. In Counts 2 through 5, Movant was charged with possession of child pornography on four different media: a desktop computer, a laptop computer, a thumb drive, and three compact discs, all in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). At trial, the forensic expert, Det. Charlie Longson of the Osceola County Sheriff's office, testified that some images and videos of child pornography were moved between devices. For example, images were moved from Movant's desktop computer to his laptop using the thumb drive. CR DE 141 at 134-35. The compact discs in Count 5 were essentially backups of the files found on the laptop and desktop computer. *Id*. at 155, 199. In total, 39 videos and 78 still images were recovered from the devices. CV DE 12.

To date, neither the Supreme Court nor the Eleventh Circuit has ruled on whether multiple charges for possession of the same images of child pornography across different devices are multiplicitous.  When Movant was charged and tried, the law was split on the issue, with the majority of cases finding that charging an individual with multiple counts of possession of child pornography for the same images on separate physical media was not multiplicitous. *See, e.g., United States v. Schales*, 546 F.3d 965, 979 (9th Cir. 2008); *United States v. Planck*, 493 F.3d 501, 504 (5th Cir. 2007); *United States v.  Flyer*, 2006 WL 2590459, at *4 (D. Ariz. Sept. 7, 2006); *United States v. Hinkeldey*, 626 F.3d 1010, 1013 (8th Cir. 2010).  Movant points to Second and Fifth Circuit decisions holding otherwise.  Those cases concluded that "the plain language of [§ 2252(a)(4)(B)] provides that a person who possesses '1 or more' matters containing a prohibited image has violated the statute only once." *United States. v. Polouizzi*, 564 F.3d 142, 155 (2d Cir. 2009); *see also U.S. v. Kimbrough*, 69 F.3d 723, 730 (5th Cir. 1995). Additionally, the Tenth Circuit recently found that multiple counts of possession of the same images on different devices is in fact multiplicitous and the appropriate remedy is to vacate all but one of the convictions and their resulting sentences. *United States v. Elliott*, 937 F.3d 1310, 1316 (10th Cir. 2019). Where there is a lack of clarity in the applicable law at the time, however, an attorney is not liable for an error of judgment on that unsettled law.  *See Guyton v. United States*, 447 F. App'x 136, 139 (11th Cir. 2011) (holding counsel's failure to argue an unsettled Florida statute at the time of a sentencing hearing was not ineffective assistance of counsel); *see also Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) (holding that due to the uncertainty of Florida law at the time on the habitual felony offender statute, counsel's advice to reject a plea bargain was not unreasonable).  0Since the issue of multiplicity of child pornography charges pursuant to 18 U.S.C. § 2252(a)(4)(B) was

and remains uncertain in the Eleventh Circuit, Movant's counsel cannot be found to have provided ineffective assistance for failing to object to Count 2 through 5.

Further, Movant cannot show prejudice. Regardless of whether he was charged with possession of child pornography in one count or four counts, Movant's advisory sentencing guidelines range would not change under the grouping rules.  Under Section 3D1.2(d) of the U.S. Sentencing Guidelines, all of Movant's child pornography counts were grouped to determine his advisory guidelines range.   PSI at ¶18.  Thus, movant's advisory guideline range of life imprisonment would not have changed. The fact that Movant faced four counts compared to one is irrelevant to his overall sentence. Therefore, Movant has failed to show deficient performance or prejudice.

Movant also contends that appellate counsel was ineffective for failing to argue Counts 2 through 5 were multiplicitous on appeal. Movant says if the argument was made, the Eleventh Circuit would have found plain error and would have vacated all but one of Movant's possession of child pornography convictions. The same two-pronged test under *Strickland* applies when examining the performance of appellate counsel.  *Eagle v. Linahan*, 279 F.3d 926, 938 (11th Cir. 2001).  Thus, under *Strickland*, the appropriate inquiry in an ineffective assistance of appellate counsel claim is whether, based on the record, appellate counsel's performance fell below that of an objective standard of reasonableness and counsel's deficient performance prejudiced the movant.

In this case, Movant does not meet either of the two prongs.  In light of the law as it existed at the time, appellate counsel could have reasonably concluded that the multiplicity issue was not a winning one.  Further, even if the argument were raised and won, the error would likely have been deemed harmless since Movant's sentence would not have changed under the applicable

24

grouping sentencing rules.   Consequently, Movant was not prejudiced by appellate counsel's failure to raise this issue and claim 3 should be denied.

### 4.   COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT TO THE JURY INSTRUCTION.

In **claim 4**, Movant asserts that counsel was ineffective for failing to object to the trial court's jury instruction regarding the meaning of the word "induce" as used in Count 1.   As to Count 1, the trial court instructed the jury in relevant part:

> The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt: (1) the Defendant knowingly persuaded, induced, enticed, or coerced an individual who had not attained the age of eighteen years to engage in sexual activity, as charged…<u>As used in this instruction, "induce" means to stimulate the occurrence of or to cause.</u>

CR DE 96 at 12 (emphasis added).   That instruction was based on the Eleventh Circuit's Pattern Jury Instruction in effect at the time and the Eleventh Circuit's ruling in *United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004).   In *Murrell*, the Eleventh Circuit held that the word "induce" in the context of Section 2422(b) means "to stimulate or cause."   *See Murrell*, 368 F.3d at 1287.   The Eleventh Circuit affirmed this position more recently in *United States v. Wilkerson*, 702 F. App'x 843, 848 (11th Cir. 2017).

Movant argues that instead of providing the definition set forth in *Murrell*, the trial court should instead have instructed the jury that "induce" means "to transform or overcome the will of the minor," which requires more affirmative effort.   In support of this instruction, Movant relies on *United States v. Hite*, in which the D.C. Circuit held that the word "induce" as used in Section 2422(b) means conduct "aimed at transforming or overcoming the child's will." *Hite*, 769 F.3d 1154, 1167 (D.C. Cir. 2014).   *Hite* is not governing law in this circuit, however, and was decided after Movant's trial. Thus, it is not controlling here.

The undersigned is also not persuaded by Movant's reliance on *United States v. Lee* and *United States v. Landon*.  Although these are Eleventh Circuit cases decided prior to Movant's trial, they do not address the definition of the term "induce" as used in Section 2422(b) and relate to other aspects of the statute.  *United States v. Lee*, 603 F.3d 904, 913 (11th Cir. 2010) (rejecting the defendant's argument that he did not violate Section 2422(b) since he communicated only with an adult intermediary and there were no actual children involved); *United States v. Lanzon*, 639 F.3d 1293, 1298 (11th Cir. 2011) (rejecting movant's argument that he did not violate Section 2422(b) since he did not complete a sexual act and failed to take a substantial step). Thus, Movant has failed to show ineffective assistance of counsel because the instruction given to the jury about the meaning of "induce" was and is in line with governing Eleventh Circuit law.  Any objection by counsel to the trial court's instruction would have been denied.  Counsel is not ineffective for failing to raise non-meritorious issues.  *Moore*, 240 F.3d at 917. As a result, Movant's argument in claim 4 should be rejected.

### 5.   COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO FILE AN ADDITIONAL MOTION TO SUPPRESS BASED ON PARTICULARITY.

In **claim 5**, Movant asserts that trial counsel was ineffective for failing to move to suppress evidence seized pursuant to the first search warrant on the basis that it violated the Fourth Amendment's particularity requirement.  As a preliminary matter, the undersigned notes that this is not a case where counsel failed to file a motion to suppress.  Here, counsel filed two motions to suppress which contained multiple arguments.  The first motion argued that the evidence seized from the first warrant should be suppressed because the affidavit failed to establish a sufficient nexus between the computers at Movant's residence and the alleged criminal activities. CR DE 41 at 2. The motion also asserted that the agent who provided the affidavit made certain material misrepresentations and deliberately omitted information that would have impacted the judge's

decision to issue the warrant. *Id.* at 3. The second motion sought to exclude evidence seized during execution of the second warrant because the affiant did not have specialized training to conclude that a sexually explicit letter found in Movant's home was written by a minor. CR DE 39 at 3.[4] That motion further argued that if the court found the first warrant lacked probable cause, then any materials found pursuant to the second warrant would be inadmissible as "fruits of the poisonous tree." The trial court denied both motions.[5] CR DE 86; 87.

Claim 5 asserts that in addition to the arguments he made, counsel should also have argued that the first warrant violated the Fourth Amendment's particularity requirement. Movant has failed, however, to show his counsel provided ineffective assistance. The Court's review of both motions to suppress shows counsel carefully examined each warrant and described in great detail the ways in which he found them to be defective. Good advocacy requires weeding out some arguments to stress others; therefore, counsel is not deficient for choosing some lines of defense over others. *Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013) ("[I]t is quite difficult to establish that the omission of any particular argument resulted in ineffective assistance, although such a showing is possible if the argument or arguments neglected were stronger than the ones counsel actually offered."); *Chandler*, 218 F.3d at 1318 ("[C]ounsel's reliance on particular lines of defense to the exclusion of others – whether or not he investigated those other defenses is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable."). Movant has failed to show counsel's strategic choice to pursue certain

---

[4]   Although the docket entry for this motion precedes the docket entry for the other motion to dismiss, the undersigned refers to is as the "second motion to suppress" because it relates to the second warrant issued and executed.

[5]   The magistrate judge issued a Report and Recommendation on each motion, recommending they be denied. *See* CR DE 65; 66. The District Court subsequently adopted both Report and Recommendations. No hearing was held on either motion.

arguments for suppression over others was unreasonable and therefore has failed to show counsel's performance was deficient.

Movant also fails to show the argument he now advances is meritorious. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must … prove that his Fourth Amendment claim is meritorious[.]". *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). If the omitted course of action was not viable or unlikely to succeed, then the attorney did not act deficiently by not pursuing it. *See Arvelo*, 788 F.3d 1345 (holding that the likelihood of the omitted motion to suppress succeeding informs both *Strickland* prongs).

The Fourth Amendment provides that a search warrant shall only be issued upon a showing of probable cause and that the warrant should particularly describe the places to be searched and things to be seized. U.S. Const. amend. IV. "A warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers. The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described[.]" *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986). "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *See also United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982). The purpose of the particularity requirement is to "ensure[] that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

Movant argues that the first warrant impermissibly authorized a search of computers and technical devices used to violate any felony laws in the state of Florida. Movant complains that

the first warrant is too broadly worded and arguably encompasses any Florida felony offense.  CV DE 3 at 19.  That is an incomplete reading of the search warrant's language, however.  The warrant authorized law enforcement to search Movant's residence in Port St. Lucie, Florida.  DE 12-6 at 1.  It particularly describes the items to be seized, including computer hardware, computer software, computer-related documentation, data, equipment relating to passwords, and computer files (together, "the Property"). *Id*. at 1-2. It alleges that the Property

> is being kept and used in violation of the felony laws of the State of Florida or is being kept and constitutes evidence of, or evidence relevant to proving, **a violation of the felony laws of the State of Florida, *to wit* Travel to Meet a Minor to Engage in Sexual Activity in violation of F.S. 847.0135(4)(a); Travel to Entice a Guardian to Consent for Sex with a Child in violation of F.S. 847.01353(b); Attempted Lewd and Lascivious Battery in violation of F.S. 800.04(4)(a); Use of a Computer Service to Seduce and/or Solicit a Child for Sex in Violation of F.S. 847.0135(3)(a)**[.]

(emphasis in original).  *See* CR DE 41 at 17-19.  Movant claims the inclusion of the phrase "felony laws of the State of Florida" authorizes law enforcement to search for and seize evidence of *any* Florida felonies, not just violations of the four felonies specified in the search warrant.

The undersigned rejects this argument.  The case of *Andresen v. Maryland*, 427 U.S. 463 (1976) is instructive.  In *Andresen*, officials suspected that a real estate attorney had defrauded the purchaser of a subdivision's Lot 13T by falsely representing that the property was free of all liens. Officials sought a warrant authorizing the search of two offices used by the lawyer.  The applications sought permission to search for and seize specific documents related to the sale and conveyance of Lot 13T "together with other fruits, instrumentalities and evidence of crime at this (time) unknown."  *Id*. at 479.  After the attorney was indicted, he moved to suppress evidence seized during the search.  He argued that inclusion of the catch-all phrase "evidence of crime at this (time) unknown" turned the warrants into illegal "general warrants," authorizing the search

and seizure of evidence relating to any crime.  The Supreme Court rejected this interpretation, holding that "the challenged phrase must be read as authorizing only the search for and seizure of evidence relating to 'the crime of false pretenses with respect to Lot 13T.'"  *Id*. at 480.  Inclusion of the catch-all phrase did not turn the warrants into unconstitutional "general warrants."  The catch-all phrases were limited by other language contained in the warrants.  Interpreting a catch-all phrase to authorize a general search for evidence of crimes other than the crimes specified in the warrant would render the warrant unconstitutional.  Therefore, the catch-all phrase "violation of the felony laws of the State of Florida" must be read in tandem with the four specific laws listed thereafter to authorize the search and seizure of evidence relating only to violations of those four laws.  Indeed, the use of the phrase "to wit" indicates that what follows is a more precise description of the relevant laws.  *See* BLACK'S LAW DICTIONARY, 8th Ed. ("to wit" to means "that is to say," or "namely").

This case is distinct from *United States v. Rosa*, 626 F.3d 56, 60 (2d Cir. 2010) and *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992), upon which Movant relies. In both cases, the Second Circuit found that the subject warrants violated the Fourth Amendment's particularity requirement because they did not identify any specific illegal activity to which the items to be search were related. *See Rosa*, 626 F.3d at 62 ("The warrant directed officers to seize and search certain electronic devices, but provided them with no guidance as to the type of evidence sought."); *George*, 975 F.2d at 76 ("Nothing on the face of the warrant tells the searching officers for what crime the search is being undertaken."). Here, the warrant in question sufficiently describes the illegal activity involved to satisfy the Fourth Amendment's particularity requirement. An officer looking at the warrant would understand based on the language it contains where to focus his search and what items to seize.  Because the first search was constitutional, the second warrant,

which was based in part on what was found during the first search, was not fruit of the poisonous tree.  Movant has not met his burden to show the motion to suppress he proposes would have been successful.  Therefore, claim 5 should be denied.

## EVIDENTIARY HEARING

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief...." 28 U.S.C. § 2255(b). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  As previously discussed, Movant's claims lack merit as a matter of law or are otherwise affirmatively contradicted by the record.  A full consideration of these claims reveals that no evidentiary hearing is necessary.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his Section 2255 motion has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability ("COA"). *See Jackson v. United States,* 875 F.3d 1089, 1090 (11th Cir. 2017) (per curiam) (citing 28 U.S.C. § 2253(c)(1)). A district court should issue a certificate of appealability only if Movant makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected Movant's constitutional claims on the merits, Movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). Movant fails to make "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).

If Movant does not agree, he may bring his arguments to the attention of the district judge in objections.

## CONCLUSION

**ACCORDINGLY**, this Court recommends to the District Court that:

1.    Movant's Section 2255 motion be DENIED;

2.    A certificate of appealability be DENIED;

3.    Judgment be entered in favor of Respondent; and,

4.    The case be CLOSED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a de novo determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4,* 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this  2nd day of March, 2021.


SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE